MISSOURI POWER & LIGHT COMPANY, Appellant, v. CITY OF BUCKLIN ET AL.—163 S. W. (2d) 561.

Division One, July 1, 1942.

*Lon R. Owen* and *Anderson, Gilbert, Wolfort, Allen & Bierman* for appellant.

*Waldo Edwards* and *D. L. Dempsey* for respondents.

██ BRADLEY, C.—Action to enjoin the City of Bucklin, in Linn County, and its officers from issuing bonds for the erection and to enjoin the erection of an electrical distribution system in said city. The trial court found for the defendants, dismissed the petition, and plaintiff appealed.

The board of aldermen of the City of Bucklin, a city of the fourth class, on November 4, 1939, passed, and the mayor approved, an ordinance providing for a special election to determine the sense of the qualified voters of the city on a proposition to increase the indebtedness of the city in the sum of $17,000 and to issue bonds in that sum for the purpose of acquiring or constructing an electric distribution system for the city. The election was held December 12, 1939, and the proposition carried by the requisite two-thirds majority.

Plaintiff makes these contentions: (1) That with the $17,000 bond issue, the city's indebtedness would exceed the limit fixed by Secs. 12 and 12a of Article 10 of the Constitution; (2) that the city entered into a contract with plaintiff on March 23, 1938, whereby plaintiff was to furnish current for 10 years to operate the city's waterworks plant, and plaintiff contends that the city "is estopped to build a competing plant during said ten years;" and (3) that the proceedings for the bond issue "are not valid because the result of the election was not declared by ordinance or resolution."

██ Defendants make the point that the Supreme Court does not have jurisdiction of this appeal, because, say defendants, no con-

stitutional question is involved. Among the cases, appeals in which lie to the Supreme Court, are these: (1) In cases where the amount in dispute, exclusive of costs, exceeds the sum of $7500; (2) in cases involving the construction of the Constitution of the United States or of this State; and (3) in cases where a county or "other political subdivision of the State is a party." [Constitution, Art. 6, Sec. 12, and Sec. 3, Amendment of 1884; Sec. 2078, R. S. 1939.] If the present appeal lies to the Supreme Court it must be on one or more of the three grounds above mentioned. Jurisdiction of the appeal is in the Supreme Court because of the amount involved. [See Butler et al. v. Board of Education of Consolidated School Dist. No. 1 et al. (Mo. Sup.), 16 S. W. (2d) 44. See also Hight et al. v. City of Harrisonville, 328 Mo. 549, 41 S. W. (2d) 155; Hagler et al. v. City of Salem, 333 Mo. 330, 62 S. W. (2d) 751.] The last two cases mentioned were ruled by this court without mention of the question of jurisdiction. It will not be necessary to consider other grounds above mentioned.

At the time of the election at which the $17,000 bond issue was approved the assessed ▮▮▮ valuation of the City of Bucklin on which its debt limit would be determined under Sec. 12, Art. 10, Constitution, was $415,689. The debt limit fixed by Sec. 12, Art. 10, is "five per centum on the value of the taxable property." Sec. 12a of Art. 10, Constitution, provides that "any city in this State containing not more than thirty thousand (30,000) inhabitants, may, with the assent of two-thirds (⅔) of the voters thereof voting at an election held for that purpose, be allowed to become indebted in a larger amount than specified in section 12 of article 10 of the Constitution of this State, not exceeding an additional ten (10) per centum on the value of the taxable property therein, for the purpose of purchasing or constructing waterworks, ice plants, electric or other light plants, to be owned exclusively by the city so purchasing or constructing the same. . . ."

Under the Constitution the debt limit of the City of Bucklin, for the $17,000 bond issue, was 15% of $415,689, or $62,353.35. At the time of the election, December 12, 1939, the city had an outstanding indebtedness of $45,000 represented by bonds issued for city waterworks. The $45,000 waterworks bonds, and the $17,000 electric distribution system bonds, make a total of $62,000, which amount is not in excess of 15 per cent of the assessed valuation. But plaintiff contends that the city, at the time of the election, had an indebtedness of $745.86 in addition to the $45,000 in waterworks bonds, and that the total indebtedness at time of the election was $45,745.86, which sum, added to the $17,000 bond issue voted, made a total of $62,745.86, or $392.51 in excess of 15 per cent of $415,689.

Defendants say that there was no evidence to support a finding that the city, at the time of the election, had an outstanding indebted-

ness of $745.86 in addition to the $45,000 for waterworks bonds, and that, therefore, the judgment below could not be disturbed on such theory.

Plaintiff's evidence was rather meager, and defendants introduced no evidence at all. Plaintiff introduced the ordinance providing for the election, the $17,000 bond issue, etc. The ordinance fixed December 12, 1939, as the date of the election and recited that on the date of the election the city would "have outstanding indebtedness only in the amount of forty-five thousand dollars ($45,000) as represented by bonds issued for the purpose of constructing a waterworks system in and for said city." And the ordinance further recited that "the additional indebtedness now proposed to be incurred, to-wit, seventeen thousand dollars ($17,000), when added to the aforesaid outstanding indebtedness aggregating forty-five thousand dollars ($45,000), will not exceed any limitation of indebtedness as prescribed under section 12 and 12a of Article 10 of the Constitution of the State of Missouri or under any statute of said state."

Plaintiff introduced a certificate of the city treasurer under date of March 29, 1938, and filed in the office of the State Auditor, April 18, 1938. So far as pertinent this certificate recites:

"I, O. E. Rouse, city treasurer within and for the City of Bucklin, in Linn County, Missouri, do hereby certify that on the 24th day of January, 1938, the City of Bucklin, Missouri, had the following outstanding and unpaid indebtedness and none other, to-wit:

| | |
|---|---|
| Outstanding waterworks bonds dated December 1, 1936 | $25,000.00 |
| Outstanding judgment indebtedness | ———— |
| Outstanding warrants for which current funds are not available | 745.86 |
| Other indebtedness | ———— |
| Total | $25,745.86 |

"I do further certify that on said 24th day of January, 1938, an election was held in said city, at which the issuance of additional bonds was authorized in the amount of twenty-two thousand dollars ($22,000) for the purpose of constructing a waterworks system in and for said city."

It is conceded that the question of excessive debt depends on whether the trial court, under the evidence, should have found that the $745.86 in outstanding warrants on January 24, 1938, was a debt at the time of the $17,000 bond election on December 12, 1939. Plaintiff made no effort to prove that such was the case except by introducing the certificate of the city clerk. What is said in the certificate as to the $745.86 being a debt is all the evidence on the question. It will be noted that the certificate has reference to a date a year and 10½ months prior to the date of the $17,000 bond election.

To support the contention that the $745.86 was a debt of the city on December ■■■■ 12, 1939, plaintiff relies solely on the certificate and the presumption that a status of a continuous nature once shown to exist will be presumed to continue, absent any showing to the contrary. "A general rule of presumptions is that where the existence at one time of a certain condition or state of things of a continuing nature is shown, the presumption arises that such condition or state continues to exist until the contrary is shown." [McDaniels v. Cutburth et al. (Mo. Sup.), 270 S. W. 353, 1. c. 359; Greenleaf on Evidence (16 Ed.), p. 138, sec. 41; 22 C. J., p. 267, sec. 594.] The general rule is that "proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference, within logical limits, that it exists at a subsequent time. The limits of time within which the inference of continuance possesses sufficient probative force to be relevant vary with each case. Always strongest in the beginning the inference steadily diminishes in force with lapse of time, at a rate proportionate to the quality of permanence belonging to the fact in question, until it ceases or perhaps is supplanted by a directly opposite inference." [22 C. J., p. 86, sec. 28.]

It has been held that a claim against an estate, once shown to exist, is presumed to remain unpaid until the contrary is shown. [Carder v. Primm, 47 Mo. App. 301, 52 Mo. App. 102; Diel v. Stegner, 56 Mo. App. 535.] In Fifth-Third National Bank v. McCrory et al., 191 Mo. App. 295, 1. c. 297, 298, 177 S. W. 1058, it is said: "The law as to the presumption of the continuance of things or conditions shown to have once existed, is frequently stated in such general terms as to be confusing and misleading. The application of a presumption of continuance of the condition of things depends upon what they are. If the things are such as in their nature are not continuous, then there is no presumption. The presumption, itself depending on the nature of things, should never be allowed such application as will oppose the nature of such things. . . . A presumption is only allowed from necessity, to prevent a failure of justice, in cases where the litigant has nothing better. It is not allowed when the party seeking its indulgence knows, or has evidence of the actual fact. That is, when a litigant does not need it, he should not ask it."

We find no case holding that a public debt in a certain sum is presumed to continue in such sum. Plaintiff did not need to invoke the presumption in order to obtain justice. If the $745.86, or a part thereof sufficient to make the city's debt exceed the constitutional limit was still a debt of the city, such evidence could have been easily obtained by plaintiff upon whom was the burden of proof. As appears, the assessed valuation of the defendant city was $415,689, and it was the duty of the city collector to collect the taxes, and it was the duty of the proper city officers to pay the city's debts from tax money collected. Officer and private citizen alike are presumed

to perform their duties. [State ex rel. Gracy v. Bank of Neosho, 120 Mo. 161, 25 S. W. 372; McCallister v. Ross et al., 155 Mo. 87, l. c. 94, and cases there cited, 55 S. W. 1027; State ex rel. Gottlieb v. Western Union Tel. Co., 165 Mo. 502, l. c. 516, 65 S. W. 775; Yeamans et al. v. Lepp, 167 Mo. 61, l. c. 70, 66 S. W. 957.] In the situation we do not think that the presumption which plaintiff invokes should be indulged, and we so rule.

■ Was the city estopped to erect an electric distribution system for the duration of the contract to furnish current for the operation of the city waterworks? As supporting such contention plaintiff relies on State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities Co., 331 Mo. 337, 53 S. W. (2d) 394; State ex inf. McKittrick ex rel. City of Springfield v. Springfield City Water Co., 345 Mo. 6, 131 S. W. (2d) 525. What we may term the Sikeston case was in quo warranto to oust the Missouri Utilities Company from the city "and exclude it from all rights, privileges, and franchises of furnishing electric light and power within said city, and from all rights, privileges and franchises of occupying the streets, avenues and alleys of said city with its poles, wires, and other electrical equipment." And the Springfield case was in quo warranto to oust the Springfield City Water Company "from the use, in connection with its water system, of its streets and public thoroughfares of the City of Springfield."

The cases cited do not support the contention that the city is estopped as claimed. And we might say that, so far as the record shows, the only interest plaintiff has in the City of Bucklin is the contract to ■ furnish current to operate the city waterworks, and the electric line constructed for that purpose. Plaintiff alleged that it was "the owner of an electric light and power system in the City of Bucklin, and the holder of a certificate of convenience and necessity" to operate in the city. Defendants, for answer, filed a general denial. The nearest approach to proof that plaintiff owned an electric system in Bucklin was the evidence of two of its employees. Mr. E. B. Mordecai was asked if he "did any work in connection with extending the distribution system in the City of Bucklin out to the Bucklin waterworks for the pumping station," and answered that he did. And a question to plaintiff's district manager, Mr. Duncan, assumed that plaintiff had a distribution system in Bucklin. However, it seems that it was taken for granted that plaintiff did have such system, and we will assume such. However, there is nothing in the record tending to suggest that the city will not carry out the contract with plaintiff to furnish current to operate the waterworks plant. By the last statement we do not mean to imply that a breach by the city of said contract would entitle plaintiff to enjoin the erection of the distribution system. Certainly there is no merit in the claim of estoppel.

■ Were the proceedings for the bond issue void "because the result of the election was not declared by ordinance or resolution?" As supporting this contention plaintiff relies on Sec. 7371, R. S. 1939. Sec. 7371, applicable by Sec. 7372, R. S. 1939, to all cities, towns, and villages in the state, provides: "Upon the result of such election being certified by the judges and clerks thereof to the council, board of aldermen or trustees, as the case may be, if the proposition to incur or increase such indebtedness be assented to by at least two-thirds of the electors voting on the proposition at such election, the council, board of aldermen or trustees, as the case may be, may, by ordinance or resolution, declare the result of such election and cause bonds of such municipality to be issued . . ."

Plaintiff introduced page 59 of the "Minute Book of the City of Bucklin." If the page was dated such does not show in the record. The minutes recite that the mayor called the meeting to order and announced that "the board of aldermen should canvass the results of the special election held in the city December 12, 1939;" that "the result of the election was read and showed" 256 votes for the bond issue and 112 votes against it. Then the following:

"A motion made by P. E. Rouse that the results of the special election be spread on the minutes and that the proposition for the incurring of a debt of $17,000 for the purpose of erecting, building, or acquiring an electrical distribution system, be declared carried. The motion was seconded by Walter Wright. The question was put to a roll call and the results were as follows:

"J. C. Davis, yes; P. R. Rouse, yes; Walter Wright, yes, and F. I. Anderson, yes. The result shows that all four voted yes and the mayor declared the motion carried. (Signed) J. Hogan, Mayor, W. S. Dean, Clerk."

Plaintiff did not show that the minute page introduced was all the action taken by the board of aldermen pertaining to the result of the election. In other words it was not shown that there was no formal ordinance or resolution declaring the result of the election, and if it was the duty of the board of aldermen, in order to make the election valid, to declare the result by a formal ordinance or resolution, which we do not decide, then in the situation, right action on the part of the board will be presumed.

The judgment should be affirmed and it is so ordered. *Hyde* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.