**Sharon HURT and Douglas Hurt, Appellants,**

v.

**GENERAL MOTORS CORPORATION, Appellee.**

**No. 76–1571.**

United States Court of Appeals, Eighth Circuit.

Submitted March 17, 1977.

Decided May 3, 1977.

Donald L. James, St. Louis, Mo., for appellants; Donald L. James and Patrick F. McLaughlin, of Moser, Marasalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, Mo., on brief.

Joseph M. Kortenhof, St. Louis, Mo., for appellee; Peter B. Hoffman, of Kortenhof & Ely, St. Louis, Mo., and Frazer F. Hilder, Gen. Counsel, General Motors Corp., Detroit, Mich., on brief.

Before BRIGHT and ROSS, Circuit Judges, and URBOM, Chief District Judge.[*]

BRIGHT, Circuit Judge.

■ Sharon Hurt allegedly ruptured her colon when her body partially submarined under a seat belt in an automobile collision. Thereafter, Sharon Hurt and her husband, Douglas Hurt, brought this action for damages against General Motors Corporation, the manufacturer of the automobile in which Mrs. Hurt was riding. The Hurts tried and submitted this case to a jury solely on the theory that the manufacturer was strictly liable for having produced a defective product, i. e., the seat belt. A jury denied recovery to Mr. and Mrs. Hurt, and they bring this appeal from the judgment of dismissal, contending that the trial court erred in instructing the jury. We affirm the dismissal regardless of the challenges made to the instructions, for on our review of the record, we find no evidence of any product defect, and determine that General Motors Corporation was entitled to a directed verdict on its motion made at the close of the evidence. Thus, any errors in the instructions to the jury were harmless.

On March 10, 1974, while driving into an intersection in Arnold, Missouri, the front of the Hurt vehicle collided with the right side of a pickup truck which had approached and entered the intersection from the left. Driver Douglas Hurt and Mrs. Hurt were occupying the front seat of a 1973 Chevrolet Nova sedan. The impact occurred rather suddenly, and Mr. Hurt estimated that he was travelling at a speed of ten miles per hour. Sharon Hurt, who was sitting on the passenger's side of the front seat of the vehicle, wore a lap seat belt but not the shoulder harness. She testified that as a result of the accident her body submarined underneath the seat belt and that she noticed a pain in her abdomen immediately following the accident. No others in the Chevrolet Nova sustained injuries. Mr. Hurt testified that he had not fastened his own safety belt.

Mrs. Hurt's medical history disclosed that she previously had complained of stomach pains, colon difficulties, and associated problems, and that a year prior to the accident physicians diagnosed her condition as chronic ulcerative colitis. Following the accident, her physicians discovered a ruptured colon which required surgical repair. Mrs. Hurt was hospitalized over an extensive period of time in the treatment of this condition.

Copies of federal regulations relating to seat belts were admitted into evidence by stipulation. *See* Standard No. 209 and Standard No. 210 (49 C.F.R. §§ 571.209 and 571.210 (1976)). The pertinent standards read as follows:

> § 571.209 Standard No. 209; Seat belt assemblies.
>
>     *       *       *       *       *       *
>
> S.3.  Definitions.  *  *  *

---

[*] WARREN K. URBOM, Chief Judge, United States District Court, District of Nebraska, sitting by designation.

"Pelvic restraint" means a seat belt assembly or portion thereof intended to restrain movement of the pelvis.

\* \* \* \* \* \*

S.4.1. \* \* \*

(b). *Pelvic Restraint.* A seat belt assembly shall provide pelvic restraint whether or not upper torso restraint is provided, and the pelvic restraint shall be designed to remain on the pelvis under all conditions, including collision or rollover of the motor vehicle. \* \* \* [49 C.F.R. § 571.209 (1976).]

Standard No. 210 specifies angle requirements for seat belts, and as material here, provides that the seat belt "shall extend forward from the anchorage at an angle with a horizontal of not less than 20° and not more than 75°." [49 C.F.R. § 571.210 S.4.3.1.1 (1976).] All experts agreed that the seat belt in the Nova automobile extended forward from the anchorage at an angle of 45° from the horizontal.

The plaintiffs' theory of product defect centered on the allegation that the 45° seat belt failed to provide pelvic restraint. Plaintiffs' experts, two mechanical engineers, testified that a 45° seat belt would not provide pelvic support or pelvic restraint under the circumstances of this particular accident. Each expert based his opinion on Sharon Hurt's testimony that she had submarined under the belt and that her knees had probably struck the dash. One of the witnesses for the plaintiffs opined that the seat belt angle should be at 90° from the horizontal to prevent such submarining movement upon a front end impact, even though a vehicle so equipped could not be sold in the United States because such a seat belt would violate federal regulations. Another expert called by the plaintiff rendered his opinion that a seat belt angle from anchorage close to the maximum 70° or even more would provide "pelvic support."

Neither of these witnesses characterized the seat belt as defective or in violation of the regulations. The testimony, interpreted most favorably to appellants' position, is that in this particular accident, in light of Mrs. Hurt's description of the circumstances of the accident, the seat belt did not prevent complete pelvic movement in a front end collision. Moreover, these witnesses in discussing pelvic support or restraint in no way referred to the definition used in the federal standards that "pelvic restraint" means a seat belt assembly or portion thereof intended to restrain movement of the pelvis. No doubt exists that the seat belt here in question in some degree did restrain movement of the pelvis.

The testimony of the various experts indicated that a seat belt at a 90° to horizontal angle across the pelvis, perpendicular to the car floor, would exert the greatest downward force on the body and that a seat belt at a 0° to horizontal angle across the body, parallel to car floor, would exert the greatest pressure against forward movement of the body. A seat belt extending at a 45° angle from the horizontal across the pelvis would tend to restrain both upward and forward body movement to some degree, but might not completely prevent an automobile passenger from some sliding effect (or submarining as described by Mrs. Hurt) under the seat belt in a front end collision.

The appellants' own witnesses testified that a number of factors affect the reaction of a seat-belted automobile passenger to the impact of the collision. Some of the factors mentioned were the position of the person's body at the time of impact, the angle of the seat back, the softness of the seat, the material used in seat construction, the tightness of the belt, the position of the belt in relation to the person's body, the position of the seat forward or backward in relation to the point at which the seat belt is anchored to the car frame, the size and shape of the person's body, etc. The witnesses also agreed that ease of use and practicality are important design considerations. Yet the appellants' claim of design defect rested only upon the angle of the seat belt (45° from the horizontal) and Mrs. Hurt's testimony, which for purposes of this appeal is accepted as a fact, that her body "submarined" on impact. She stated that she had

attached the seat belt two inches above her legs but that after the accident the belt was positioned about three inches higher.

A seat belt, when attached, affords the automobile occupant some protection, but no absolute assurance against injury in an automobile accident. Thus, in setting the angle of the seat belt, the manufacturer must contemplate reducing the likelihood of injury under a general range of circumstances including many different types of automobile accidents involving passengers of various sizes and shapes, not one particular accident.

Here, the appellants offered no evidence that the manufacturer failed to comply with the multifaceted regulations adopted by the federal government regulating the standards and installation of seat belts in motor vehicles. The 45° seat belt must be deemed to comply with federal standards as to seat belt design, even though that equipment did not on impact completely prevent all pelvic movement. The standards do not require a guarantee that the pelvis, which is restrained by the seat belt, will not move at all upon impact. That the 45° seat belt did not prevent the injury in this case is not sufficient to establish a jury issue that the product was defective. The seat belt did not fail. Mrs. Hurt testified that after impact she remained tightly restrained, although her body had shifted its position.

■ In order to recover on strict liability the party claiming recovery must establish a product in a defective condition within the contemplation of § 402A, Restatement (Second) of Torts.[1]

No evidence presented in this case indicates that the seat belt in the Chevrolet Nova as constructed or installed posed an unreasonable risk of injury to an automobile passenger. Plaintiffs' experts, although testifying that a seat belt installed at or near a vertical angle might have prevented Mrs. Hurt's particular injury, did not characterize the seat belt as defective in the general context of motor vehicle accidents. *See generally* Note, *Manufacturers' Liability for Design Defects*, 56 Neb.L.Rev. 422, 429 (1977).

No doubt the manufacturers of automobiles could design and build safety harnesses for automobile drivers and passengers of the kind used to prevent injury to those who engage in automobile racing. But it is doubtful that the motoring public would be willing to burden themselves with such restraints. Indeed, in this case the evidence showed that the driver, Douglas Hurt, had not fastened his own seat belt and that no one had used the available shoulder harnesses in the vehicle. The comment that this author made on another occasion seems particularly appropriate here:

> No doubt the manufacturers of automobiles could design and build an automobile with the strength and crash-damage resistance features of an M-2 army tank. I believe the average and reasonable automobile user desires only a reasonably safe, economical form of motor transportation. No greater burden of design-performance ought to be imposed upon automobile manufacturers by either judge or jury. [*Melia v. Ford Motor Co.*, 534 F.2d 795, 805 (8th Cir. 1976) (Bright, J., dissenting).]

*See Dreisenstok v. Volkswagenwerk, A.G.*, 489 F.2d 1066, 1070–73, 1076 (4th Cir. 1974); *Larsen v. General Motors Corp.*, 391 F.2d 495, 502 n. 3 (8th Cir. 1968); *Anton v. Ford Motor Co.*, 400 F.Supp. 1270, 1280 (S.D.Ohio

---

1. That section reads:

§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer.
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
  (a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
  (a) the seller has exercised all possible care in the preparation and sale of his product, and
  (b) the user or consumer has not bought that product from or entered into any contractual relation with the seller.

1975); and *Dyson v. General Motors Corp.*, 298 F.Supp. 1064, 1073 (E.D.Pa.1969).

Based on the record presented to us, we hold that the plaintiffs' case utterly lacked merit. The jury properly rejected the plaintiffs' contentions, and even if the jury was misinstructed, an issue that we do not need to reach here, it would have been incumbent for the district court to have set aside any verdict granted to the plaintiffs.

Affirmed.