Karl E. BRAUN, Appellant,

v.

GENERAL MOTORS CORPORATION, Respondent.

No. 39209.

Missouri Court of Appeals, Eastern District, Division 2.

March 20, 1979.

Leroy Crouther, Jr., Thad F. Niemira, St. Louis, for appellant.

Joseph M. Kortenhof, Kortenhof & Ely, St. Louis, for respondent; Otis M. Smith, General Motors Corp., Detroit, Mich., of counsel.

STEPHAN, Presiding Judge.

Plaintiff Karl E. Braun appeals from a judgment entered upon a directed verdict in favor of defendant General Motors Corporation at the close of a three-and-a-half-day jury trial.

This litigation arises from an automobile collision which occurred in July, 1973, when plaintiff's car, while turning left off U.S. Highway 67 near Poplar Bluff, was struck in the right front quarter panel by a car traveling in the opposite direction. Plaintiff sustained a severe skull fracture on the right side, slightly forward of the ear, and was unconscious for some ten and a half days following the accident. The injury necessitated a number of operations and resulted in partial temporary paralysis and loss of coordination on plaintiff's left side, occasional loss of memory and equilibrium, and drastic personality change. Plaintiff was forced to undergo extensive physical and psychiatric therapy. He was unable to return to work for approximately two years after the accident and at the time of trial was experiencing some difficulty on the job because of his memory lapses.

Plaintiff's second amended petition alleged that he sustained personal injuries when his head struck the inside rearview mirror of his car, manufactured by defendant, during the accident; and that such injuries were caused by a defect in the design of the mirror. Plaintiff's prayer sought actual damages of $750,000 from General Motors and the other driver involved in the accident and $500,000 in punitive damages from General Motors. At the time of trial plaintiff's claim against the other driver had been settled and the case was tried against General Motors alone. Defendant's motion for a directed verdict at the close of plaintiff's case was overruled, but an identical motion at the close of all the evidence was sustained. Plaintiff's motion to dismiss his cause without prejudice, made while defendant's second motion for directed verdict was under consideration, was denied.

It was plaintiff's contention at trial that the defect in the design of the mirror lay in the upper ball joint, situated in the retainer plate or bracket where the support arm of the mirror attaches to the frame of the car, above the windshield. The purpose of the upper ball joint is to permit forward/rearward adjustment of the mirror to suit the driver's needs. This joint, of course, must have some stiffness or resistance to movement or the mirror would simply hang loosely from the car's frame. It must, however, be designed to move with relative ease in the interest both of convenience of adjustment and of safety. Simply stated, plaintiff maintained at trial that the upper ball joint was too stiff, that the amount of force required to cause the mirror to deflect or break away upon impact made the mirror unreasonably dangerous.[1]

On appeal, plaintiff makes three assignments of error. He contends that the trial court erred in (1) excluding certain testimony of his expert witness; (2) sustaining defendant's motion for a directed verdict; and (3) denying plaintiff's motion to dismiss his cause without prejudice. We find these points to be without merit and affirm the judgment of the trial court.

■ In the first point mentioned above, plaintiff charges error in the trial court's exclusion of opinion testimony of his expert witness, John Senne, (a) as to the possibility that a driver could, under the conditions present in the accident, strike his head on the rearview mirror; and (b) as to the adequacy of the design of the mirror; and the exclusion of (c) a demonstration in which Senne and plaintiff's counsel proposed to illustrate the damage that could be done upon impact with a mirror by striking and breaking a small red quarry tile with the edge of a mirror similar to the one in plaintiff's car. It is unnecessary that we consider plaintiff's challenges to the trial court's rulings on this evidence, however, for in all three instances the evidence was admitted at a later point in the trial. Senne answered the two questions during rebuttal and later during direct examination, respectively; plaintiff's counsel performed the demonstration during examination of another witness. Senne's answers and the demonstration are therefore all part of the record and will be considered by this court on the issue of the submissibility of plaintiff's case.

■ In his second point, plaintiff first contends that the trial court improperly sustained defendant's motion for a directed verdict at the close of all the evidence because it had denied defendant's first such motion, made at the close of plaintiff's case. Plaintiff seems to be arguing that the trial court, in overruling defendant's first motion, somehow "certified" the case as submissible and was later precluded from ruling otherwise regardless of the sufficiency

---

1. In his petition, plaintiff originally contended that the mirror did not comply with Federal Motor Vehicle Safety Standard 111 S3.1.2.2, originally promulgated in 32 Fed.Reg. 2413. That section provides that "If the mirror is in the head impact area, the mounting shall break away without leaving sharp edges or deflect or collapse when the mirror is subject to a force of 90 pounds in a forward or sideward direction in any plane 45° above or below the horizontal." At trial, counsel for plaintiff conceded that this standard was probably met and attempted to prove that the mirror was nonetheless unreasonably dangerous.

of his evidence. The issue, however, is not the logical consistency of the court's two rulings but the propriety of the second ruling. If plaintiff's evidence did, in fact, fail to establish a submissible case, it is immaterial at which point in the trial the court so ruled. Cf. *Rotermund v. Basic Materials Co.*, 558 S.W.2d 688, 693 (Mo.App.1977).

In determining whether plaintiff's evidence established a submissible case, we must, of course, consider that evidence in the light most favorable to plaintiff. We accept such evidence as true and give plaintiff the benefit of all favorable inferences reasonably drawn therefrom. Defendant's evidence is to be disregarded except insofar as it aids plaintiff's case. *Weatherford v. H. K. Porter, Inc.*, 560 S.W.2d 31, 33 (Mo. App.1977); *Winters v. Sears, Roebuck and Co.*, 554 S.W.2d 565, 569 (Mo.App.1977); *North County School District v. Fidelity & Deposit Co.*, 539 S.W.2d 469, 477 (Mo.App. 1976).

Missouri has adopted § 402 A of the Restatement (Second) of Torts as its standard of liability in products liability cases.[2] *Keener v. Dayton Electric Manufacturing Co.*, 445 S.W.2d 362, 364 (Mo. 1969). That section has been held applicable to suits brought against the manufacturer of a product alleged to have been defectively designed, *Blevins v. Cushman Motors*, 551 S.W.2d 602, 606–607 (Mo. banc 1977), *Polk v. Ford Motor Co.*, 529 F.2d 259,

265 (8th Cir. 1976), and requires in this case that plaintiff prove, inter alia, (1) that the mirror design contained a defect which made it unreasonably dangerous when put to a use reasonably anticipated;[3] (2) that the mirror was in substantially the same condition at the time of the accident as it had been when manufactured by defendant; and (3) that the defect in the mirror was the proximate cause of injuries sustained by plaintiff while he was using the mirror in a manner reasonably anticipated. See *Keener*, supra, 366. Defendant contends that plaintiff failed to prove any of these elements of his case. We need not consider points (2) and (3), as we hold that the record, judged in the light of the principles set forth above, is wholly devoid of evidence from which a jury could reasonably infer that the design made the mirror unreasonably dangerous.

Plaintiff's case on this issue rests largely on the testimony of Mr. Senne, a mechanical engineer with experience in accident reconstruction and fault analysis. Senne's testimony was based on a visual examination of the rearview mirror, which had been removed from plaintiff's car after the accident and was admitted into evidence; examination of and experimentation with "exemplary" mirrors similar to the one from plaintiff's car; and examination and measurement of salvaged remnants of plaintiff's car.[4]

---

**2.** "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

    (a) the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

    (a) the seller has exercised all possible care in the preparation and sale of his product, and

    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

**3.** It has been noted that where the defect alleged is in the design, rather than the condition, of the product (that is, "[w]here the product is made precisely as it was intended to be made") the term "defective condition" in § 402 A has little independent meaning and "the true test is whether the product is unreasonably dangerous when put to a use reasonably anticipated." *Caplaco One, Inc. v. Amerex Corporation*, 435 F.Supp. 1116, 1119 (E.D.Mo.1977); Wade, "Strict Tort Liability of Manufacturers", 19 Southwestern L.J. 5, 14–15 (1965).

**4.** The record indicates that the mirror had been removed, at the request of plaintiff's counsel, from plaintiff's car in a salvage yard near Poplar Bluff some eight months after the accident, and that the upper ball joint was not moved during the removal or thereafter. Plaintiff's counsel would not permit the witness Senne to

At no time during his testimony did Senne characterize the mirror design as defective or unreasonably dangerous. See *Hurt v. General Motors Corporation*, 553 F.2d 1181, 1184 (8th Cir. 1977). Senne was asked his opinion of the adequacy of the design of the upper ball joint with regard to its ability to deflect under impact. His answer simply dealt with the general physical laws of inertia. The gist of the answer was that a greater amount of pressure is required to move any physical object with a sudden, intense impact than that necessary to move the same object the same distance under a constant, static push. Since the total force exerted on an object is a function both of the amount of the force and the time during which it is applied, as the time factor decreases the amount of force exerted must be increased to move the object the same distance. As noted, supra, footnote 1, federal safety regulations require that inside rearview mirrors be so designed as to deflect or break away when subjected to a pressure of ninety pounds or less. A General Motors representative testified that defendant's requirements were more stringent, that the mirrors manufactured by defendant were tested and adjusted so as to deflect under twenty to fifty pounds of pressure. The heart of plaintiff's claim of a defective design is that defendant's testing was done with a spring scale, which exerts a constant, steady pressure and that such testing therefore totally failed to take into account and adequately safeguard against the sudden force which is likely to be exerted on a mirror during an accident. However, plaintiff introduced no evidence as to the amount of force required to deflect plaintiff's mirror on impact, or as to the force necessary to fracture the human skull or otherwise injure the body. Senne's testimony in this regard simply did not go beyond discussion of the laws of physics. In his demonstration, plaintiff's counsel showed that a small red quarry tile could be used to deflect a mirror (slightly larger than plaintiff's) when exerting a steady force on it, but that the same tile would shatter when struck by the edge of the mirror. Because of the great dissimilarity of the conditions under which the demonstration was conducted and the accident occurred [cf., e. g., *Blevins v. Cushman Motors*, 551 S.W.2d 602, 610 (Mo. banc 1977)], we believe the demonstration to be probative of nothing more than the general laws of physics to which Senne attested. The most that could reasonably be inferred from Senne's testimony and the demonstration is that it would require more than twenty to fifty pounds of pressure to deflect plaintiff's mirror under impact. To infer anything more from that evidence, specifically, to infer that the design was defective or unreasonably dangerous, would be pure speculation and conjecture. *Hale v. Advance Abrasives Co.*, 520 S.W.2d 656, 658 (Mo.App.1975).

■ Plaintiff also introduced, as evidence of the defect, the following excerpt from a Request for Admission which had previously been served on defendant:

Request: "That the inside rearview mirror assembly on plaintiff's vehicle was not designed to break away under impact."

Answer: "Admitted, in view of the technically preferable deflect or collapse option in the standard."

Plaintiff characterizes this answer as an admission of a defect in the design. In fact, however, it is nothing more than a statement of the obvious truth that defendant chose to comply with the federal regulation quoted supra, footnote 1, through a deflect-design mirror. The admission says nothing as to the reasonableness of that choice, and we do not believe any inference favorable to plaintiff's case can reasonably be drawn therefrom.

In sum, plaintiff's evidence proved little more than an injury sustained during the use of defendant's product. For that alone,

move or test the joint; hence, his examination of the mirror was solely visual. The part of plaintiff's car otherwise available for Senne's inspection apparently included only the left front interior, the driver's area. That section had been reconstructed from salvaged parts and was stored in the basement of the office of plaintiff's counsel. The record does not detail how or when plaintiff obtained these parts.

a manufacturer will not be held liable. To do so would be to hold such manufacturer an absolute insurer of all who use its product. The law merely imposes on defendant the burden of designing and constructing reasonably safe vehicles, *Hurt v. General Motors Corporation,* 553 F.2d 1181, 1184 (8th Cir. 1977), and plaintiff's evidence failed to prove that it did not do so in this instance.

 Finally, plaintiff contends that the trial court erred in denying his motion for dismissal without prejudice, made during the hearing on defendant's motion for a directed verdict after the close of all the evidence. Voluntary dismissal is governed by Rule 67.01, which provides in part:

> "A civil action may be dismissed by the plaintiff without prejudice without order of court any time prior to the introduction of evidence. After the introduction of evidence is commenced, a plaintiff may dismiss his action without prejudice only by leave of court or by written consent of the adverse party. Leave of court shall be freely granted when justice so requires."

In the instant case, we believe the trial court could and did properly rule, in effect, that justice did not require the granting of leave to plaintiff to take a voluntary nonsuit. It is obvious from the wording of Rule 67.01 that the Supreme Court intended that a trial court have discretion in this regard. We cannot hold that discretion to have been abused where, after a three-and-one-half-day trial, during which plaintiff obviously had the opportunity to present all of the admissible evidence available to him, leave to dismiss without prejudice was denied. There are here present no circumstances which militate against our deferring to the exercise by the trial court of its discretion: plaintiff had not suffered the unexpected unavailability of a witness; there is no indication that any witness testified differently than had been expected; nor is there any indication in the record that, upon retrial, plaintiff could produce evidence sufficient to make a submissible case. Plaintiff's counsel moved for dismiss-

al after stating his belief, on the record, that defendant's motion for a directed verdict would be sustained. Counsel's effort was a desperate, though unavailing, effort to avoid the consequences of inadequate proof. However circumscribed the trial court's discretion in denying such a motion may be, cf. *Daniel v. Laclede Gas Company,* 575 S.W.2d 226 (Mo.App.1978), we hold that it was not abused in this case.

The judgment is affirmed.

CRIST and KELLY, JJ., concur.