Howard C. OHLENDORF, Plaintiff-Appellant,

v.

Bernard FEINSTEIN and Fred Whaley, Defendants-Respondents.

No. 42613.

Missouri Court of Appeals, Eastern District, Division Four.

July 13, 1982.

Jack H. Ross, Harold P. Heitmann, Clayton, for plaintiff-appellant.

Jerome A. Gross, Irl Baris, St. Louis, for defendants-respondents.

PUDLOWSKI, Judge.

Plaintiff, Howard C. Ohlendorf, is appealing a judgment against him in a court tried case on a cross-claim to wind up a partnership in which the plaintiff and the defendants, Bernard Feinstein and Fred Whaley, were partners. The facts are as follows:

On May 23, 1974, the Missouri State Highway Commission offered seven tracts of land in Jefferson County for sale at auction. Defendant Feinstein submitted the highest bid for all seven tracts. This bid of $568,703.25 was subsequently accepted by the State Highway Commission.

Feinstein signed a sales agreement on May 23, and delivered a check for ten percent of the purchase price ($56,870.32) to the State Highway Commission. Immediately after the bidding, Ohlendorf, Feinstein and Whaley discussed the formation of a partnership. On May 25, 1974, all three parties executed a notice of assignment documenting the partnership agreement. Ohlendorf subsequently recorded this assignment. Pursuant to the formation of the partnership Ohlendorf and Whaley each transferred $18,956.77 to Feinstein. The purpose of the partnership was to obtain purchasers (including themselves) for the seven tracts, so that when the purchase from the State Highway Department was closed, the partnership could immediately resell the tracts for a profit. The three partners were to share equally in the expenses and profits of the partnership.

The parties endeavored to find individual buyers for the tracts. Ohlendorf undertook to purchase tract 3 himself, for $150,000. Prior to August, 1974, the parties were partially successful at finding buyers for the other tracts. In August, however, there was a falling out among the parties. Ohlendorf informed the other parties that the partnership was dead as far as he was concerned. Ohlendorf stated that he had no intention of purchasing tract 3. He subsequently notified the State Highway Commission that the partnership would not complete the purchase of the seven tracts. There is no doubt that Ohlendorf wrongfully breached the partnership agreement causing a dissolution of the partnership.

Ohlendorf filed suit against Feinstein and Whaley seeking recovery of the $18,956.77 he transferred to Feinstein at the inception of the partnership. Defendants filed a cross-claim to wind up the joint venture pursuant to § 358.370, RSMo (1969). Defendants sought damages in the form of lost profits for Ohlendorf's wrongful breach of the partnership agreement. § 358.380 RSMo (1969). The trial judge dissolved the partnership under § 358.320 RSMo (1969). Judgment was entered in favor of Feinstein against Ohlendorf in the amount of $50,-932.25, and in favor of Whaley against Ohl-endorf in the same amount. This appeal followed.

In his first point on appeal plaintiff contends that the defendants failed to prove that the lost profits were a direct and proximate result of plaintiff's breach of the partnership agreement. This position is based upon the assertion that the defendants would not have suffered any damages if they had proceeded with the purchase and sale of the seven tracts on their own account. We find plaintiff's position unpersuasive.

■ Dissolution of a partnership results when any partner ceases to be associated with the carrying on of the partnership business. § 358.290 RSMo (1969). In this case, dissolution was recognized by decree of the trial court upon its finding that the plaintiff willfully breached the partnership agreement. § 358.320 RSMo (1969). Dissolution, however, is not a termination of the partnership business. The partnership business continues until the winding up of the partnership affairs is complete. § 358.300 RSMo (1969). The partners who have not wrongfully dissolved the partnership have the *right* to wind up the partnership business. § 358.370 RSMo (1969). The partners, however, are not required to exercise their right to wind up the business. "The Uniform Partnership Law contemplates that dissolved partnerships may continue in business for a short, long or indefinite period of time, ... so long as none of the partners insist on a winding up and final termination of the partnership business." *Schoeller v. Schoeller,* 497 S.W.2d 860, 867 (Mo.App.1973). Thus, when a dissolution is caused by the wrongful act of a partner, the innocent partner(s) have an election of remedies. They may: wind up the partnership business, and seek damages from the wrongful partner; continue the business in the same name, either by themselves or jointly with others, or, continue the business and seek damages. § 358.380 RSMo (1969).

■ This review of the law clearly demonstrates that when a partnership is dis-

solved due to the wrongful conduct of a partner, the innocent partner(s) have the option of winding up the partnership business or continuing it. By statute, the right to terminate the business and seek damages is unconditional. § 358.370 RSMo (1969). Plaintiff's position here is really a backhanded attempt to impose a limitation upon the defendants' right to wind up the partnership. Plaintiff asserts that the defendants' damages are not a proximate result of his wrongful conduct, because the defendants would have obtained their profits if they had continued the business. The practical effect of adopting this position would be to impose a duty upon the defendants to continue the partnership business if there is a reasonable certainty that it will be profitable. We refuse to impose a duty which is clearly contrary to the provisions of the Uniform Partnership Law. Thus, the defendants' damages in this case become a direct and proximate consequence of the plaintiff's wrongful conduct, once the defendants elected to wind up the partnership business.

In his next point on appeal plaintiff contends that the testimony of Feinstein and Whaley regarding alleged oral offers to purchase tracts 1, 2, 6 and 7 was inadmissible because the testimony is hearsay. Therefore, the trial judge erred when he relied upon this testimony in making his award of damages. Furthermore, plaintiff asserts that the evidence at trial was too speculative and conjectural to establish damages within the required degree of reasonable certainty.

The trial court found that the partnership was in a position to sell tract 7 to Ozark Realty Company for $2,500. This finding was based upon Feinstein's testimony that he received an oral offer from Ozark Realty Company in the amount of $2,500 for tract 7. In Missouri no claim of error may be considered by an appellate court in civil appeals unless it was presented to and decided by the trial court. *Villaume v. Villaume*, 564 S.W.2d 290, 297 (Mo.App.1978). The record shows that the plaintiff did not object at trial to Feinstein's testimony on

tract 7. Thus, the alleged error with respect to tract 7 is not preserved for review by this court.

The trial court found that the partnership was in a position to sell tract 1 to Lee Sutterfield for $51,500, tract 2 to Carl Williams for $52,000 and tract 6 to Howard Morgan for $65,500. This finding was based on testimony by both Whaley and Feinstein that: they informed Ohlendorf of the prices discussed with Sutterfield, Williams and Morgan, and; Ohlendorf rejected the prices as too low.

Hearsay is defined as evidence of an out of court statement made by a person other than the witness, which is offered by the witness to prove the truth of the matter asserted. *Mash v. Mo. Pac. R. Co.*, 341 S.W.2d 822, 827 (Mo.1960). On its face, the testimony of both defendants is clearly hearsay, since it was offered to prove that Sutterfield, Williams and Morgan were willing and able buyers for the three tracts at the aforementioned prices. Nonetheless, the defendants contend that their testimony is admissible because it fits within a hearsay exception—admission by a party opponent.

At issue in this case with respect to lost profits is whether there was a market comprised of willing and able buyers for the three tracts in question at the prices testified to by the defendants. The utterance which constitutes the admission is Ohlendorf's oral rejection of the alleged oral offers related to him by the defendants. The record demonstrates that Ohlendorf had no personal knowledge of the alleged offers. In fact Ohlendorf's awareness of the offers was based solely upon the hearsay statements made to him by the defendants. In Missouri it is not required for an admission against interest, that the admitted fact come within the personal knowledge of the admitting party. *Sparr v. Wellman*, 11 Mo. 230, 234 (Mo.1847); *Scherffius v. Orr*, 442 S.W.2d 120, 125 (Mo.App.1969). Thus, Ohlendorf's oral statement is competent as an admission that there was a market for the property in question at the specified prices. The question, however, is

whether this admission alone is sufficient to establish the defendants' lost profits within a reasonable degree of certainty. We hold that it is not.

 Expected profits are uncertain and remote, and contingent upon changing circumstances; and can be recovered only when made reasonably certain by proof of actual facts which present data for a rational estimate of their worth. The damages may not be left to mere speculation or conjecture. *Riddle v. Dean Machinery Co.*, 564 S.W.2d 238, 257 (Mo.App.1978). The only evidence on the lost profits for tract 1, 2 and 6 is Ohlendorf's admission with respect to the hearsay assertions of the defendants. An admission against interest which is not based on the personal knowledge of the declarant is evidence of a very unsatisfactory character, depending altogether on the circumstances under which it is made. *Sparr v. Wellman, supra* at 234. The lack of knowledge clearly affects the weight of such evidence. *Leibow v. Jones Store Co.*, 303 S.W.2d 660, 664 (Mo.1957). Furthermore, verbal admissions against interest are the weakest and most unsatisfactory kind of evidence ... for the reason that this class of evidence is subject to error, imperfection and mistake. *O'Neil v. Claypool*, 341 S.W.2d 129, 134 (Mo.1960). Thus, Ohlendorf's admissions against interest based upon the hearsay statements of the defendants are competent and have some probative value. These oral admissions standing alone, however, are not sufficient to establish within a reasonable degree of certainty the lost profits for tracts 1, 2 and 6.

Ohlendorf had no personal knowledge of the alleged oral offers. His awareness of the alleged offers was based solely upon the hearsay statements of the defendants. Ohlendorf's oral statement that the alleged offers were not enough is at best a tacit admission of the existence of those offers, for the statement indicates that he was primarily concerned with the sales price for the tracts. Thus, Ohlendorf's admission is of little evidentiary weight, and the nature of this evidence is far too conjectural and uncertain to support the trial court's findings of fact on lost profits. Defendants, in order to carry their burden of proof on the damages issue, must produce other evidence of actual facts which establish the existence of a market for the property at a specific price.

The trial court's findings of fact and award of damages for tracts 1, 2 and 6 is reversed and remanded for further proceedings to determine the lost profits, if any, for those tracts. In all other respects the decision of the trial court is affirmed.

SMITH, P. J., and SATZ, J., concur.