Howard C. OHLENDORF,
Plaintiff-Appellant,

v.

Bernard FEINSTEIN and Fred Whaley,
Defendants-Appellants.

No. 46968.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 17, 1984.

Jack H. Ross, Leigh H. Greenshaw, Coleman, Ross, Carey, Goetz & Schaaf, Inc., Clayton, for plaintiff-appellant.

Jerome A. Gross, St. Louis, for defendants-appellants.

GAERTNER, Presiding Judge.

This is the second appeal of this case which arose from a land purchase and resale venture undertaken by appellant, Ohlendorf, and his former partners, Feinstein and Whaley. This court affirmed the determination that Ohlendorf wrongfully

breached the partnership agreement causing a dissolution of the partnership. *Ohlendorf v. Feinstein,* 636 S.W.2d 687 (Mo. App.1982). However, the cause was remanded due to insufficiency of the evidence to establish adequate proof of loss of partnership profits.

The facts giving rise to this dispute are set forth in detail in our earlier opinion. Briefly stated, seven tracts of land were offered for sale at auction by the Missouri Highway Commission. Bids were first taken on each of the seven tracts individually, and then on the entire lot. Feinstein's bid, $568,703.25, for the entire lot was the highest and was accepted. Ohlendorf, Whaley and Feinstein agreed to join in this purchase and to re-sell the individual tracts contemporaneously with the closing of the purchase. Disagreement over acceptance or rejection of offers led to Ohlendorf's withdrawal. He instituted this action seeking to recover his partnership contribution of $18,956.77 and Feinstein and Whaley counter-claimed seeking damages in the form of lost profits pursuant to § 358.380, RSMo 1978.

Before Ohlendorf withdrew the partners had signed contracts for the sale of tract four for $345,000 and tract five for $55,000. The trial court found Ohlendorf had agreed to purchase tract three from the partnership for $150,000, but reneged on this agreement when he withdrew from the partnership. Evidence from the first trial regarding a prospective sale of tract seven for $2,500 was not objected to and, thus, the judgment pertaining to that tract was not disturbed on the first appeal. Our remand was based on the insufficiency of the evidence at the first trial regarding only the remaining tracts, one, two and six, and our mandate directed the trial court to determine any possible loss of profits regarding only those tracts.

At the second trial, the parties agreed that the evidence adduced at the first trial was before the court and need not be repeated. Additionally, Everett Lee Sutterfield testified that he had orally agreed with Whaley to buy tracts one and two for $107,500.[1] He testified he had the money available and on at least two occasions called Whaley to urge speedy preparation of the sale documents.

Henry Collins, who had contracted for the purchase of tract three for $345,000, was qualified as an expert witness regarding real estate values and transactions in the area. He expressed his opinion that there was a ready market among land speculators for a quick sale of the land. Based upon other sales in the area on a per acre value, he computed the total value of tracts one and two to range from $303,375 to $333,375. Regarding tract six, Collins opined a value of $3,500 per acre, a total of $41,125. However, in its findings, the trial court found the partners could have sold tracts one and two for $107,500, the amount of the Sutterfield offer, and tract six for $65,500. The latter figure was not Collins evaluation, but rather was the amount of an offer which Ohlendorf had refused to accept, as testified to at the first trial. The trial court found the partners could have sold tracts three, four, five, and seven for $552,500 and tracts one, two and six for $173,000, a total of $725,500. After deducting the purchase price of $568,703.25, the partnership profit would have been $156,796.75. The court entered judgment in the sum of $52,265.58 against Ohlendorf in favor of Feinstein and in like amount in favor of Whaley, with interest thereon from the date of the original judgment. All parties appeal.

On this appeal after the second trial on the issue of partial damages, our review is limited by the standards of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Thus, we look to the sufficiency and weight of the evidence to support the judgment and the propriety of the declaration and the application of the law. As our earlier decision has established that Ohlendorf breach-

---

1. Sutterfield testified that he understood the partners had a prior purchaser at a larger amount for one of the two tracts. His offer was to purchase the other, or both if the prior deal was not completed.

ed the partnership agreement thereby conferring upon the remaining partners an unconditional right under § 358.380, RSMo 1978 to terminate the partnership business and seek damages for their loss of profits, we focus upon the sufficiency of the evidence to support the damage award found by the trial court.

■ Anticipated profits may be recovered "only when they are made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount; and, when this is made to appear, they may be recoverable." *Coonis v. Rogers*, 429 S.W.2d 709, 714 (Mo.1968). The requirement for proof of loss of profits is not absolute certainty, but only a sufficient factual basis such that the estimate of the loss is not based upon speculation or conjecture. *Swiss-American Importing Co. v. Variety Food Products Co.*, 471 S.W.2d 688, 690 (Mo.App.1971).

## I.

### OHLENDORF'S APPEAL

Ohlendorf maintains there was insufficient evidence before the court to sustain its finding of lost profits without resorting to speculation and also appeals the awarding of interest dating back to the first judgment.

■ As to the insufficiency of the evidence, Ohlendorf relies upon a line of cases exemplified by *Coach House of Ward Parkway, Inc. v. Ward Parkway Shops, Inc.*, 471 S.W.2d 464, 472 (Mo.1971) and *Coonis v. Rogers*, 429 S.W.2d 709, 714 (Mo. 1968), for the general proposition of law that anticipated profits of a commercial business are too remote and speculative to warrant recovery except where they are made reasonably certain by proof of actual facts with present data for a rational estimate of their amount. He then argues that because an agreement for the purchase and sale of land is unenforceable until reduced to writing, there can be no certainty of an anticipated profit from such a sale in the absence of a written contract. This argument overlooks the distinction

noted in *Ward Parkway* between the degree of certitude required to establish the fact of damage and the lesser certainty required regarding the amount of damages. "One whose wrongful conduct has rendered difficult the ascertainment of damages cannot escape liability because the damages cannot be measured with exactness." *Ward Parkway* at 471 citing *Flagg v. Andrew Williams Stores*, 127 Cal. App.2d 165, 273 P.2d 294 (1954). Further, where the fact of damage caused by a defendant's wrongdoing is clear, "it is reasonable to require a lesser degree of certainty as to the amount of loss, leaving a greater degree of discretion to the jury, subject to the usual supervisory power of the court." *Ward Parkway* at 471–72 citing *Plas-Chem Corp. v. Solmica, Inc.*, 434 S.W.2d 522, 526 (Mo.1968) and Restatement of the Law of Contracts, Vol. 1, § 331 (1932).

■ The issue in this case is not the sufficiency of the evidence to support enforcement of an agreement to purchase land, but only its sufficiency to show that the land had a reasonably certain value in a then existing market which exceeded the price paid by the partnership. We hold the evidence before the court was sufficient to support such a finding. That the partnership lost profits, the fact of damage, is inescapably established by noting that more than adequate funds were available to pay the total purchase price to the Highway Commission from the committed sale of tracts three, four, five, and seven, plus a portion of the partners' contributions. At the same time they would retain ownership of three tracts on which individuals had offered the Highway Commission a total of $129,226.12 when offered at auction on an individual-tract basis. A minimum amount of such lost profits could be established by the evidence relating to what ready, willing and able buyers had offered for the remaining tracts.

In remanding this case on the first appeal we did not disturb the finding of the trial court regarding the proposed sale of tracts three, four, five, and seven for a

**934**

total of $552,500. We set aside the finding with regard to tracts one, two, and six for the stated reason that the finding of the trial court with regard to specific amounts offered by prospective purchasers of those tracts was not supported by evidence of sufficient probative value. *Ohlendorf v. Feinstein*, 636 S.W.2d at 691. We held the testimony of Ohlendorf's rejection of what his partners told him had been offered for the three tracts could be considered as no more than an admission against interest not based upon personal knowledge. Thus, standing alone, the hearsay relating to the amount of the offers was not competent to prove the fact that offers in specific amounts had been made. *Id.*

■ After the second trial, the court found that the partnership could have sold tracts one and two for $107,500. This finding is supported by the testimony of Sutterfield that he was ready, willing, and able to pay that sum for the two tracts, that he made such an offer to Whaley and that he repeatedly urged Whaley to prepare the necessary documents.

The trial court also found

"[w]ith reference to tract six, the court has considered the evidence at the original trial and the additional evidence of Mr. Collins. This additional evidence corroborates the earlier evidence, and on the basis of all the evidence, the court finds that the partners could have obtained at least $65,500 for tract 6."

This finding is not totally supported by the evidence. The only evidence of a $65,500 offer at the first trial was the hearsay testimony we held to be insufficient in and of itself. The only additional evidence relating to the value of tract six adduced at the second trial was the testimony of Collins that he would have been willing to pay $1,600 per acre for the 11.75 acres in that tract, although he did express his opinion that the value of the land to a speculator at a "quick sale" was $3,500 per acre. Simple arithmetic demonstrates that neither of these figures corroborates the hearsay testimony of a $65,500 offer. We are constrained to set aside that part of the trial

court's order which is predicated upon the ability of the partners to obtain $65,500 for tract six.

However, we need not again remand for further testimony as we find in the record ample, competent evidence with which to exercise our discretion under Rule 84.14 to "give such judgment as the court ought to give." *Smith v. Tracy*, 372 S.W.2d 925, 939 (Mo.1963).

At the first trial, Whaley and Feinstein testified Ohlendorf had refused to accept an offer from one Howard Morgan to pay $65,500 for tract six. We held on the first appeal that Ohlendorf had no personal knowledge of this offer. However, the record clearly shows and it is undisputed that Morgan made an offer to pay the Highway Commission $60,512.50 for tract six and that he was negotiating with Ohlendorf for a higher price when the partnership venture collapsed due to Ohlendorf's withdrawal. Thus, there was competent evidence before the trial court to support a finding that the partners could have sold tract six for at least $60,512.50.

As the finder of fact, the trial court adopted a measure of damages based upon the difference between the cost of the land and the price the partners could have obtained as of the date of Ohlendorf's wrongful withdrawal. As to each tract, the court noted that its findings represented the minimum amount of such loss. We find the evidence supported the finding of the trial court that the partners were in a position to sell tracts three, four, five, and seven for $552,500 and tracts one and two for $107,500. The trial court's finding as to tract six, under the formula adopted as to the other tracts, should have been that it could have been sold for at least $60,-512.50. The total of the available sales was, therefore, $720,512.50 and the partnership lost $151,809.25 in profits from the acquisition and sale of the seven tracts.

II.

FEINSTEIN–WHALEY APPEAL

■ In their cross-appeal, Feinstein and Whaley maintain the award of damages

was inadequate. They argue that the uncontradicted evidence at the second hearing shows they each should have been awarded $134,890.58. This contention is predicated upon the unrefuted expert testimony of Collins regarding per-acre valuations based upon comparable sales in the area. Despite the fact that Ohlendorf offered no evidence in refutation of this opinion testimony, the trial court was not obliged to accept it. The trial court's determination of lost profits was expressly bottomed on its finding that offers to purchase for specific prices were available to the partners. The evidence supported this determination (as modified by this court). Giving due deference to the better opportunity of the trial court to judge the credibility of the witnesses, as we must under Rule 73.-01(c)(2), we cannot criticize the trial court for selecting one measure of damages merely because another may have been supportable under the evidence. The cross-appeal is without merit.

### III.

### INTEREST

All parties complain about the action of the trial court awarding interest upon the second judgment from the date of the original judgment, January 7, 1980. Ohlendorf argues that since the partial affirmance of the original judgment left in doubt the question of whether any lost profits could be proven, interest should not begin to run until the date of the second judgment. Feinstein and Whaley contend they are entitled to interest from the date of Ohlendorf's wrongful withdrawal from the partnership.

 As a general rule, interest is not allowable prior to judgment upon an unliquidated claim for the reason "that where the person liable does not know the amount he owes he should not be considered in default because of failure to pay." *Fohn v. Title Insurance Corp. of St. Louis,* 529 S.W.2d 1, 5 (Mo. banc 1975). Where a defendant contests only the issue of liability, but does not dispute the amount of

damages, or asserts a counter-claim or set-off, the plaintiff's claim is considered liquidated even though the amount of his ultimate liability remains in doubt. *Burger v. Wood,* 446 S.W.2d 436, 444 (Mo.App.1969). Likewise, pre-judgment interest is allowed where the amount due is readily ascertainable by computation according to a recognized standard. *Ehrle v. Bank Building & Equipment Corporation of America,* 530 S.W.2d 482, 496 (Mo.App.1975).

 Application of these general principles to the contention of Feinstein and Whaley that interest should run from the date of Ohlendorf's breach of the partnership agreement shows the contention to be without merit. At that date, even the fact that Feinstein and Whaley would sustain a loss of profits was non-ascertainable. They could have elected to proceed with the partnership endeavor, making a profit or suffering a loss as matters developed. § 358.380, RSMo 1978. Prior to the first trial, the fact that purchase offers had been made, as well as the amount of such offers was in dispute as to all but tracts four and five. The original judgment established offers for tracts three and seven as well, but the total of these four offers was less than the purchase price payable by the partners to the highway commission. Offers for the remaining tracts continued to be disputed, both as to the fact and the amount thereof. There was no "recognized standard" by which to ascertain the extent of the loss sustained by the remaining partners. Therefore, no interest could be assessed from the date of the breach.

The effect of the decision in this court on the first appeal regarding the assessment of interest is more complicated. All parties rely upon *Senn v. Commerce-Manchester Bank,* 603 S.W.2d 551 (Mo. banc 1980). Although this decision of the Supreme Court is readily distinguishable, the language of the opinion is informative. In *Senn* on the first appeal the plaintiffs were grouped into three classes. As to Class I, the judgment was reversed and that class dropped out of the picture. As to Class II,

**936**

the cause was remanded for the sole purpose of crediting the defendants with set-offs in amounts determinable from the evidence at the trial. As to Class III, the judgment was affirmed but modified for reassessment of actual and punitive damages according to a formula fixed by the Supreme Court and based upon the testimony already adduced. *Id.* at 551–52. Because the only action required of the trial court was to comply with the mandate of the Supreme Court by entering a modified judgment, and because no further disputed issues remained upon which evidence need be taken or a decision made, the Supreme Court affirmed the award of interest as of the date of the original judgment. Particular note was given by the Supreme Court to the language of the original mandate on the first appeal that "the cause [is] remanded solely for the entry of individual judgments as follows ...", followed by directions which the trial court executed. *Id.* at 553.

Here, rather than remanding the case for a modification of the judgment based upon the existing record, this court's mandate directed the trial court to conduct "further proceedings to determine the lost profits, if any," for tracts one, two, and six. Until such further proceedings, both the existence and the amount of damages were indeterminate.

Further, it is impossible to pro-rate the loss of profits between tracts three, four, five, and seven, on which the resale price was fixed by the original judgment and the first appeal, and tracts one, two, and six upon which the resale price remained in dispute until the second trial, and, indeed, until modification by this court. This is so because the purchase of all seven tracts in bulk prevents a determination of profits realized from the sale of any one tract. The inability to apportion the per-tract cost renders the determination of the per-tract profit impossible. That the damages remained undetermined until after the second trial is clearly reflected in our order remanding the case "to determine the lost profits, if any ..." Until the amount of damages becomes certain, no interest is generally allowable. *Herberholt v. DePaul Community Health Center,* 648 S.W.2d 160, 162 (Mo.App.1983).

However, the general rule does not apply to the modification ordered by this court with regard to the loss of profits as to tract six. "When a judgment is modified upon appeal, whether upward or downward, the new sum draws interest from the date of entry of the original order, not from the date of the new judgment." *Senn v. Commerce-Manchester Bank,* 603 S.W.2d at 553, quoting with approval from *Espinoza v. Rossini,* 257 Cal.App.2d 567, 65 Cal.Rptr. 110, 112 (Ct.App.1967). Our order merely modifying the amount of the judgment is governed by this rule.

Accordingly, the judgment of the trial court is affirmed as modified and the cause is remanded with directions to enter judgment in favor of Feinstein and against Ohlendorf in the sum of $50,603.08, and in favor of Whaley and against Ohlendorf in the sum of $50,603.08, said judgments to bear interest at the rate of 9% per annum from January 25, 1983, the date of entry of judgment after the second trial.

SMITH, J., and FRANK CONLEY, Special Judge, concur.