KAM, INC.,
**Plaintiff-Respondent-Appellant,**

v.

**Robert D. WHITE and Bessie P. White,
Defendants-Respondents,**

and

**Susan Butler, Defendant-Appellant.**

Nos. 13131, 13148.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 13, 1984.

David C. Humphreys, Joplin, for plaintiff-respondent-appellant; Blanchard, Van Fleet, Martin & Robertson, Joplin, of counsel.

John Sims, Ruyle, Sims & Lampo, Neosho, for defendants-respondents.

F. William Joyner, Miller, Sanford, Joyner, Westbrooke & Tyndall, Robert E. Almirall, Springfield, for defendant-appellant.

GREENE, Judge.

Defendant, Susan Butler, appeals from the trial court's judgment against her in favor of plaintiff, KAM, Inc., following jury trial, in the sum of $14,008.02. KAM cross-appeals the trial court's order directing a verdict in favor of defendants, Robert and Bessie White, which order was entered at the close of plaintiff's evidence. We affirm.

Evidence sufficient to support the trial court's judgment and its order directing a verdict in favor of the Whites was that on November 27, 1973, KAM sold its interest in a business known as the "Bay Mule", a liquor store and delicatessen, to the Whites. In the transaction, the Whites received all furniture, fixtures and inventory in the store, plus the assignment of a lease on the premises which were located at 2629 Main Street in Joplin, Missouri. As consideration for the sale, the Whites executed a promissory note in the sum of $17,000 payable to KAM at the rate of $206.26 a month.

On February 24, 1977, the Whites sold the furniture and fixtures in the establishment and assigned their interest in the lease to Susan Butler. She established a flower shop on the premises called the "Flower Cart." The bill of sale from the Whites, which was delivered to Susan, contained the following language:

"This sale is made subject to the existing loan on the above described merchandise, payable to KAM Inc., which Susan Butler assumes and agrees to pay in addition to the $600.00 cash paid with the signing of this agreement."

In the lower left-hand corner of the bill of sale, the following language appears:

"I hereby consent to the assignment of the above-described loan.

KAM, Inc. by /s/ <u>Robert M. Jennings</u>
President"

Ms. Butler made payments on the note until November 9, 1977, when she sold the flower shop to Julia Hammar, an employee of Susan's at the flower shop. A written contract for the sale of the business was entered into and executed by Susan and Julia. In the contract, Julia agreed to as-sume the KAM note and the existing lease, and to hold Susan harmless from liability on both.

Julia made payments on the note until November 2, 1978, at which time the unpaid balance was $10,666.08. After collection attempts were to no avail, KAM sued the Whites and Susan Butler for the unpaid balance plus interest and attorney fees. In their answer, the Whites pleaded release, by reason of Jennings' agreeing to the assignment of the note obligation to Susan. In her answer, Susan pled the statute of frauds as a defense. She also filed a third-party petition against Julia Hammar, alleging Julia had assumed and agreed to pay the note. The petition against Julia was dismissed, after she was discharged from liability on the note by reason of bankruptcy.

On appeal, Susan alleges that the trial court erred in overruling her motion for directed verdict because the liability sought to be imposed amounted to answering for the debt of another, which was not evidenced by a written agreement in violation of the Statute of Frauds, § 432.010,[1] and the Uniform Commercial Code, § 400.3–401(1).

■ Susan did not raise the applicability of § 400.3–401(1) at trial or in her post-trial motions. An issue not presented to or expressly decided by the trial court in a jury-tried case is not preserved for appellate review. *Turcol v. Shoney's Enterprises, Inc.*, 640 S.W.2d 503, 507[7] (Mo.

App.1982); *Ohlendorf v. Feinstein*, 636 S.W.2d 687, 690[3] (Mo.App.1982). Nevertheless, ex gratia review of the point reveals it to lack merit. § 400.3–401(1) states that "[n]o person is liable on an instrument unless his signature appears thereon." Official Uniform Commercial Code Comment 1 explains the effect of the statute:

"Nothing in this section is intended to prevent any liability arising apart from the instrument itself. The party who does not sign may still be liable on the original obligation for which the instrument was given, or ... even on an oral guarantee of payment where the Statute of Frauds is satisfied."

Missouri cases have recognized that the underlying obligation may provide the basis for a cause of action quite apart from an instrument securing the obligation. *Burk v. Walton*, 337 Mo. 781, 86 S.W.2d 92, 94[4] (1935); *Reifeiss v. Barnes*, 192 S.W.2d 427, 430[1] (Mo.App.1946); see also § 400.3–802(1)(b). Accord, *McClung v. Saito*, 4 Cal.App.3d 143, 84 Cal.Rptr. 44, 48[4] (1970). Thus, the fact that Ms. Butler did not sign the note itself is of no avail.

■ Contra to Susan's contention, the statute of frauds is not applicable under the facts of this case. An oral agreement or promise, if original, is enforceable; if collateral, it is not. An agreement or promise is original if credit is given by the promisee to the promisor with the main purpose of the promisor being to gain advantage for himself, or promote an interest or purpose of his own, rather than becoming a guarantor or surety of another's debt, and the agreement is made upon a consideration beneficial to the promisor. *Galemore Motor Co., Inc. v. State Farm Mut. A. Ins. Co.*, 513 S.W.2d 161, 166[7–9] (Mo.App.1974).

■ The evidence adduced at trial, shows that Susan's promise was original and not within the statute of frauds. Her assumption of the obligation to plaintiff was not that of a guarantor or surety, but was part of her purchase of the Whites'

---

**1.** Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S.

business. Such was the nature of her "main purpose" in assuming the responsibility for repayment of the debt. See also, *Burk v. Walton*, 337 Mo. 781, 86 S.W.2d 92, 95[4] (1935). The point is denied.

Next, Susan alleges that the evidence on the issue of her assumption of the note was not clear, cogent and convincing and, therefore, the trial court erred in overruling her motion for directed verdict and in submitting that issue to the jury.

Case law requires that such evidence be clear and convincing when the assumption of a debt is established by parol evidence. *McFarland v. Melson*, 323 Mo. 977, 20 S.W.2d 63, 66[4] (1929); *Morris v. Holland*, 529 S.W.2d 948, 952–3[4] (Mo. App.1975). An agreement of assumption may be 1) contained in the conveying instrument, 2) made orally, or in a separate instrument, 3) implied from the transaction of the parties, or 4) shown from the circumstances surrounding the purchase, as well as the language of the instrument. *Missouri Home Savings & Loan Assoc. v. Allen*, 452 S.W.2d 109, 112[3] (Mo.App. 1970).

Plaintiff adduced sufficient evidence to warrant submission of the issue of Susan's assumption of the note. KAM entered portions of Susan's deposition into evidence in which she related that:

1) She purchased the business site in question from the Whites through their real estate agent;

2) The purchase included equipment on the premises;

3) She received a bill of sale for the transaction; and

4) That the paragraph relating to her assumption of the loan between the Whites and KAM, shown on the bill of sale, was accurate.

At trial, Susan denied the statements made in her deposition were true and accurate. She said she had only intended to make payments to KAM for the time she had possession of the premises, yet admitted contacting Jennings regarding Julia assuming the note payment obligation, as well as admitting Jennings told her that an assumption by another party must first have his approval. There was also evidence that Jennings' approval of Susan assuming the Whites' note resulted from a request to Jennings by Dr. Brothers, the other business principal of KAM and business acquaintance of Susan's husband-doctor. Although Susan denied her assumption of the note, the issue was a matter for the jury to decide. *Shearin v. Fletcher/Mayo/Associates*, 647 S.W.2d 127, 128[2] (Mo.App.1982). The point is denied.

In its cross-appeal, KAM alleges that the trial court erred in granting a directed verdict in favor of defendants-White on the ground that KAM had renounced its rights against the Whites for payment of the note. A directed verdict may be upheld only if evidence and reasonable inferences therefrom are so strongly against plaintiff that reasonable minds could not differ. *Barnett v. M & G Gas Co.*, 611 S.W.2d 370, 371[2] (Mo.App.1981).

Under § 400.3–605(1)(b), "[t]he holder of an instrument may even without consideration discharge any party ... by renouncing his rights by a writing signed and delivered...." At trial, KAM's president testified that he intended the consent typed in at the bottom of the bill of sale from the Whites to Susan to operate as a "release" of the Whites, and that Susan, not the Whites, was obligated on the note. The intention of the parties at the time the agreement is executed controls the interpretation thereof. *N.B. Harty General Contractors, Inc. v. West Plains Bridge & Grading Co.*, 598 S.W.2d 194, 196[1] (Mo. App.1980). Reasonable minds could not differ on this evidence, and the trial court properly directed a verdict in favor of defendants-Whites. *Barnett*, supra. The point is denied.

The judgment of the trial court is affirmed.

FLANIGAN, P.J., and TITUS and CROW, JJ., concur.