Eugene JENNINGS, et al., Appellants,

v.

**CHATSWORTH APARTMENTS PROJECT LTD., et al.,**
Respondents.

Nos. WD 65358, WD 65377.

Missouri Court of Appeals,
Western District.

March 21, 2006.

Frank P. Barker, III, Independence, MO, for appellants, Jennings, Kulphongpatana, and Hughes, Jr.

Robert Harold Shaw, Platte City, MO, for Appellant, Smith.

Stuart Eliot Bodker, Kansas City, MO, for Respondent.

Before JAMES M. SMART, P.J., ROBERT G. ULRICH and LISA WHITE HARDWICK, JJ.

ROBERT G. ULRICH, Judge.

Eugene Jennings, John Kulphongpatana, and the Estate of Robert Hughes, Sr. (Hughes Estate) (collectively "Plaintiffs") filed their declaratory judgment action naming as defendant James K. Smith, Personal Representative of the Estate of Richard Smith, deceased (Smith Estate). Plaintiffs also sued Chatsworth Apartments Project, Ltd., a Missouri limited partnership (Chatsworth Missouri), for failure to satisfy a promissory note dated March 1, 1995. Whether Chatsworth Missouri is subject to the provisions of a February 1, 1980, promissory note is the controlling issue in this case. If it is not, Chatsworth Missouri is not subject to the terms of the 1995 Note, which was an attempt to "renew" the 1980 Note. The Smith Estate cross-claimed against Chatsworth Missouri; the same March 1, 1995, Note constitutes the subject of the cross-claim. Chatsworth Missouri filed counterclaims against Plaintiffs. Chatsworth Missouri filed its motion for summary judgment, Rule 74.04, on Counts II (promissory note) and III (seeking equitable lien, constructive trust and/or resulting trust) of Plaintiffs' Amended Petition, and the court granted the motion, entering summary judgment. All other pending counts were dismissed without prejudice. Plaintiffs' and Smith Estate's notices of appeal were timely filed.

## Facts

Eugene Jennings and Eugenio S. Concepcion, Jr., as general partners, and limited partner Chatsworth Kansas, a Kansas limited partnership, formed Chatsworth Missouri on February 11, 1980. Chatsworth Kansas acted through Lirio Concepcion, a general partner of Chatsworth Kansas. Chatsworth Kansas was formed simultaneously with Chatsworth Missouri.[1]

Chatsworth Missouri was formed to purchase and operate the Chatsworth Apartments located in St. Joseph, Missouri. An Offering Memorandum, which contained a "Confidential Information Memorandum," was circulated among the prospective general and limited partners. The Offering

---

**1.** Chart of Ownership Interest in Chatsworth Missouri and Chatsworth Kansas

**Limited Partnerships**

Chatsworth Apartments Project, Ltd. (Missouri), a Missouri limited partnership (**Chatsworth Missouri**)—formed February 11, 1980.
 General Partners:
 ° Eugene Jennings, CPA (1/2 of 1% or unit)
 ° Eugenio Conception, MD (husband of Lirio Concepcion)(1/2 of 1% or unit)
 Limited Partner:
 ° Chatsworth Kansas Limited Partnership, Kansas limited partnership (99% interest in Chatsworth Missouri)

Chatsworth Kansas Ltd., a Kansas limited partnership (**Chatsworth Kansas**)—formed contemporaneously with Chatsworth Missouri.
 General Partners:
 ° Lirio Conception (wife of Eugenio Concepcion)(1/2 of 1% or unit)
 ° John Kulphongpatana (1/2 of 1% or unit)
 Limited Partners (99% interest in Chatsworth Kansas):
 ° Fourteen physician limited partners
 ° Eugene Jennings
 ° Estate of Robert Hughes

Memorandum articulated that the purpose of Chatsworth Missouri was to own and operate a HUD housing project located in St. Joseph, Buchanan County, Missouri, named the Chatsworth Apartments, which consisted of five acres of real estate, nine buildings containing 90 apartment units, parking facilities, a swimming pool, and storage areas. Chatsworth Missouri purchased the property from Chatsworth Apartments, Ltd., a Missouri limited partnership (Seller). The parties to the sale signed a purchase agreement that provided for a total payment of $1,900,000. The total purchase price included assumption of a $1,400,000 FHA insured mortgage at 7% interest with a thirty-seven year term to conclusion; earnest money of $5000; a $270,000 cash payment upon HUD approval at closing; and delivery at closing of a $225,000 note by Chatsworth Missouri due in 1986. The February 1, 1980, $225,000.00 note (1980 Note) stated "FOR VALUE RECEIVED, the undersigned, EUGENIO S. CONCEPCION, JR., as an individual, . . .", and was signed by Eugenio Concepcion as follows:

MAKER: Eugenio S. Concepcion, Jr., as an individual

s/_____

Eugenio S. Concepcion, Jr.

The 1980 Note also stated: "This Note is given in partial payment for the purchase of the Chatsworth Apartments project, located in St. Joseph, Missouri, which project was purchased from the Payee (Seller) hereunder by a limited partnership, in which Maker is a general partner." Chatsworth Missouri acquired the apartment complex under the terms stated, and the property was titled in its name. Chatsworth Missouri took possession of the property and operated it as a business.

Although Eugene Jennings and Eugenio Concepcion were the General Partners of Chatsworth Missouri, the partnership agreement provided that Eugenio Concepcion was the Managing General Partner with broad powers. The partnership agreement provided that:

(b) Subject to the other provisions of this Agreement, Concepcion shall be the Managing General Partner. Except as expressly otherwise set forth elsewhere in this Agreement, the Managing General Partner (acting for and on behalf of the General Partners and the Partnership), in extension and not in limitation of the rights and powers given by law or by the other provisions of this Agreement, shall, in his sole discretion, have the full and entire right, power and authority in the management of the Partnership business to do any and all acts and things necessary, proper, convenient or advisable to effectuate the purposes of the Partnership.

Additionally, the partnership agreement specifically provided that the Managing General Partner was vested with the power to borrow money for and in behalf of the partnership. The agreement stated:

In the event that additional funds are required by the Partnership for any purpose relating to the business of the Partnership or for any of its obligations, expenses, costs or expenditures, including operating deficits, the Partnership may borrow such funds as are needed from any Partner or other Person or organization, including the General Partners, for such period of time and on such terms as the Managing General Partner and the lender may agree and at the rate of interest then prevailing for comparable loans . . .

Both General Partners had full authority to manage and control the partnership's business affairs, however. The partnership agreement provided that either the

General Partners or the Managing General Partner could delegate some or all of their rights, powers, and obligations.

Robert L. Hughes, Sr. had an ownership interest in Hughes Development Company, the company that managed the property for Chatsworth Missouri, performing the day-to-day business and property management operations of the apartment complex. Although Hughes Development Company managed the property, General Partner Eugene Jennings performed the management acts and functions of Chatsworth Missouri almost exclusively for the period from inception in 1980 through 1997 or 1998. During this period Mr. Jennings caused the various financial reports, HUD reports, and tax returns to be prepared. Eugenio Concepcion knew of and consented to Mr. Jennings performing the management duties of Chatsworth Missouri, and Eugenio Concepcion did not actively participate in the management of Chatsworth Missouri during the period 1980 through 1997 or 1998.

Chatsworth Missouri prepared and distributed annual audited financial statements of its operations. All of these statements identified the $225,000 note as Chatsworth Missouri's obligation. Each annual statement identified the accrued interest owed on the $225,000 note. Every annual statement was reviewed and signed by Eugene Jennings and Eugenio Concepcion and mailed to the U.S. Department of Housing and Urban Development.

Eugene Jennings, John Kulphongpatana, Robert L. Hughes, Sr., and Gene Smith purchased the $225,000 1980 Note from Seller for the sum of $142,000 in August 1980. The $225,000 note was not in default when it was sold to them. The 1980 Note defaulted for years 1980, 1981, and 1982, and the owners of the note sued Eugenio Concepcion. Chatsworth Missouri was not named a party defendant,

and judgment was taken against Eugenio Concepcion, only, in the amount of the 1980 Note, plus interest and costs.

Eugenio Concepcion declared Chapter 7 Bankruptcy in 1988 and was discharged as a bankrupt. Eugene Jennings filed for bankruptcy on or before March 1, 1995. The partnership agreement makes provision for the event of a General Partner filing for bankruptcy. The agreement states:

> Upon the bankruptcy, death, dissolution or adjudication of incompetence of a General Partner, such General Partner shall immediately cease to be a General Partner and his interest shall without further action be converted to a Limited Partnership Interest. Such conversion of a General Partnership Interest to a Limited Partnership Interest shall not affect any rights, obligations or liabilities of the bankrupt, deceased, dissolved or incompetent General Partners existing prior to the bankruptcy, death, dissolution or incompetence of such person as a General Partner (whether or not such rights, obligations or liabilities were known or had matured).

Eugene Jennings, as a General Partner of Chatsworth Missouri, executed a new note on March 1, 1995, naming Chatsworth Missouri as the maker, in the face amount of $451,453 plus interest at 10% per annum, payable on demand to Eugene Jennings, John Kulphongpatana, Robert Hughes and Gene Smith (1995 Note). The 1995 Note contained a novation clause "discharging and releasing" Eugenio Concepcion from liability on the 1980 Note. The clause stated:

> This is a renewal and extension of a certain promissory note dated February 1, 1980 in the original principal amount of Two Hundred Twenty-five Thousand Dollars ($225,000.00) made by Eugenio S. Concepcion, Jr. and payable to Chats-

worth Apartments (*Seller*), a Limited Partnership. This Renewal Note is intended to, and shall constitute a novation of the February 1, 1980 promissory note attached hereto as Exhibit 1, and shall discharge and release the Maker of the February 1, 1980 Promissory Note. (*Emphasis added*)

The 1995 Note amount was in the sum of the unpaid original principal on the 1980 Note of $225,000, plus the unpaid accrued interest on the 1980 Note to December 31, 1994, of $226,453.00, for the total sum of $451,453.00 plus interest at 10% per annum. Chatsworth Missouri's 1994 audited financial statement included the accrued interest as of December 31, 1994. Chatsworth Missouri's audited financial statements for the period 1995 through 2001 show the 1995 Note as the obligation of Chatsworth Missouri.

Plaintiffs filed suit against Chatsworth Missouri claiming that the limited partnership had defaulted on the 1995 Note. Defendant Chatsworth Missouri filed its Motion for Summary Judgment on Counts II (1995 promissory note) and III (equitable claim) of Plaintiffs' Amended Petition contending that both the 1980 and the 1995 promissory notes were unenforceable against Chatsworth Missouri because the 1980 Note was executed by Eugenio Concepcion only as an individual and not as General Partner of Chatsworth Missouri, observing that the notation on the 1980 Note above the signature line was "Eugenio S. Concepcion, Jr. as an individual." The court accepted Chatsworth Missouri's argument and granted its Motion for Summary Judgment on March 4, 2005, holding that Chatsworth Missouri could not be held liable under the promissory note obligations because Chatsworth Missouri did not sign the 1980 Note and, therefore, because the only consideration for the 1995 Note was the extension and renewal of the 1980 Note, the claim against Chatsworth

Missouri failed for lack of consideration. The court later amended its judgment on March 11, 2005, to include denial by summary judgment of Appellant Smith Estate's cross-claim, recognizing that this claim made the same assertions. as did Plaintiff's Counts II and III. The parties then dismissed all other pending counts of the action without prejudice, and these appeals followed.

### Appellants' Jennings, Kulphongpatana, Hughes Estate and Smith Estate's Point on Appeal

The trial court's judgment asserted two grounds for finding for Chatsworth Apartments. It determined that the parol evidence rule precluded introduction of evidence regarding the partnership's ratification of the 1980 Note post execution and that section 400.3–401, RSMo 1978, barred recovery against Chatsworth Missouri as a non-signatory to the 1980 Note. The court ruled, therefore, the 1995 Note lacked consideration because the terms of the 1980 Note were unenforceable against the partnership.

Appellants, Jennings, Kulphongpatana, Hughes Estate, and Smith Estate (cross-claim), assert that the trial court erred in holding that the parol evidence rule would bar introduction of evidence of Chatsworth Missouri's subsequent ratification of the 1980 Note and, because of its holding, awarding summary judgment to the limited partnership. They contend that the rule does not bar evidence of transactions subsequent to the time of execution of a written contract when those transactions alter the terms of the prior written agreement. They claim that the evidence submitted in their response to Chatsworth Missouri's motion for summary judgment was sufficient to demonstrate ratification of the 1980 Note by Chatsworth Missouri, and, therefore, a genuine issue of material

fact exists that precludes the partnership's entitlement to summary judgment. These assertions of disputed fact that Appellants claim demonstrate ratification of the 1980 Note include Chatsworth Missouri's actions after execution of the 1980 Note, the partnership's receipt of all the benefits derived from the 1980 promissory note obligation, Chatsworth Missouri's acknowledgment of the 1980 Note as its obligation for several years and its acknowledgement of the succeeding 1995 Note as its obligation on its annual audited financial statements of operations from 1980 through 2001, and payments made by Chatsworth Missouri toward the obligations represented by the two promissory notes. Although Appellants do not raise as a separate point that the court erred in its application of section 400.3–401, RSMo 1978, they do argue in the single point raised that Chatsworth Missouri's ratification of the 1980 Note abrogates the provisions of the statute, which provides that one who did not sign a promissory cannot be held to its terms.

Chatsworth Missouri responds in its brief that the parol evidence rule was properly applied by the court and precludes introduction of evidence that it ratified the 1980 Note because such evidence would be offered to alter the clear unambiguous intent of the document. It also claims that section 400.3–401, RSMo 1978, is applicable.

## Standard of Review

The standard of review of the trial court's summary judgment is declared in *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993). In *ITT*, the court stated:

When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. (citations omitted)

*Id.* at 376. The entire record is examined to determine whether any issue of material fact exists and whether the moving party is entitled to judgment as a matter of law when reviewing a grant of summary judgment. *Country Mut. Ins. Co. v. Matney*, 25 S.W.3d 651, 654 (Mo.App. W.D.2000). "To succeed on summary judgment, a defendant must show: (1) undisputed facts negating any of plaintiffs' required elements; (2) the plaintiffs, after adequate time for discovery, cannot produce evidence sufficient to find one of plaintiffs' required elements; or (3) there is no genuine dispute as to each fact necessary to support a properly-pleaded affirmative defense." *Chouteau Auto Mart, Inc. v. First Bank of Mo.*, 55 S.W.3d 358, 360 (Mo. banc 2001) (emphasis omitted).

## Discussion

The trial court's rationale in entering summary judgment for Defendant Chatsworth Missouri on Plaintiffs' Count II and III was that the 1980 Note was the obli-

gation of Eugenio Concepcion individually and not that of Chatsworth Missouri, and the consideration for the 1995 Note was Chatsworth Missouri's obligation to pay the 1980 Note. Because Chatsworth Missouri was not obligated to pay the 1980 Note by reason of section 400.3–401, RSMo 1978, as it was not a signatory to the Note, the 1995 Note lacked consideration, and, therefore, Chatsworth Missouri is not liable to pay it. The court found that the 1980 Note is not ambiguous and that the terms of the note are understood by the note's language alone. Applying the rule that parol evidence shall not be considered where a contract is clear and unambiguous, the court determined evidence regarding whether Chatsworth Missouri ratified the 1980 Note was parol evidence and declined to consider it.

 In its motion for summary judgment and now on appeal, Chatsworth Missouri asserts that Plaintiffs are barred from raising the issue of the partnership's ratification of the 1980 Note, claiming that Plaintiffs failed to plead that the partnership ratified the note. In *Green v. City of St. Louis*, 870 S.W.2d 794 (Mo. banc 1994), the Missouri Supreme Court stated, "A court should not grant summary judgment based upon affirmative defenses that are raised for the first time in the summary judgment motion if the court would not have permitted the defendant to amend the answer to include the defenses." *Id.* at 797. Plaintiffs' claim that Chatsworth Missouri ratified the 1980 Note, while not an affirmative defense, is an assertion Plaintiffs made and, therefore, must be pleaded and ultimately proven as a theory of recovery for them to be successful. A party may amend his pleadings at any time by leave of court, and such leave should be freely given. *Asmus v. Capital Region Family Practice*, 115 S.W.3d 427, 432 (Mo.App. W.D.2003); Rule 55.33(a).

The trial judge has broad discretion to permit amendment of the pleadings at any stage of the proceedings, even after verdict. *Id.* And although the right to amend is not absolute, leave is to be freely given if justice requires. *Green*, 870 S.W.2d at 797. The factors the trial court should consider in determining whether to permit amendment of a pleading include: (1) the hardship to the moving party if the request is denied; (2) the reasons for failure to include the matter in a designated pleading; and (3) the injustice or prejudice caused the opposing party if the request is granted. *See Id.* In *Green*, the Court was aware that the defendant city failed to follow the procedure articulated in Rule 55.33(a) for amending its answer and asserting an affirmative defense. The city nevertheless contended that its affirmative defenses should be allowed through a motion for summary judgment, for reasons of judicial expediency and cost-effectiveness. This Court agreed with the principle of judicial expediency and cost-effectiveness asserted as general policy by defendant and said that it would not automatically charge a trial court with error in allowing an affirmative defense to be raised for the first time in a motion for summary judgment. It stated that the factors the trial court should consider are those used in determining whether to permit amendment of an answer. *Id.*

 The trial court in the case *sub judice*, understanding the status of the Plaintiffs' pleadings, considered the issue as though it were properly raised. The trial court, having considerable discretion to permit amendment of Plaintiffs' pleadings, effectively permitted their amendment, at least for the summary judgment motion, for the purpose of considering whether evidence of ratification of the 1980 Note by Chatsworth Missouri should be permitted

as a question of contested fact. The issue is considered on appeal.

The trial court's judgment considered and determined the impact of section 400.3–401 RSMo 1978, on Plaintiffs' claim. The parties do not question that section 400.3–401(1), RSMo 1978, was the law when the 1980 Note was signed or that it is the correct applicable statute in this case. The statute stated: "No person is liable on an instrument unless his signature appears thereon." The court determined, and the fact is not contested, that Chatsworth Missouri did not sign the note. Ergo, the court determined, Chatsworth Missouri is not liable for the terms of the note.

Because the 1980 Note was a negotiable instrument, it was subject to the Uniform Commercial Code as adopted by Missouri. § 400.3–104, RSMo 1978. The statute, existing in 1980 when the note was signed, is controlling. *Cartwright v. Wells Fargo Armored Services,* 921 S.W.2d 165, 167 (Mo.App. W.D.1996)(unless a statute clearly indicates that it is to be applied retrospectively, Article I, Section 13 of the Missouri Constitution prohibits its retroactive application unless the statute is merely procedural or remedial rather than substantive in effect). Section 400.3–401(1), RSMo 1978, was applicable to the issue considered. Although section 400.3–401(1) denied liability for an entity that did not sign a promissory note, the statute did not affect liability for the underlying transaction quite apart from the instrument securing the obligation. *KAM v. White,* 675 S.W.2d 459, 461 (Mo.App. S.D.1984). The court in *KAM* noted that Official Uniform Commercial Code Comment 1 explained the effect of the statute, stating:

> Nothing in this section is intended to prevent any liability arising apart from the instrument itself. The party who does not sign may still be liable on the original obligation for which the instrument was given, or ... even on an oral guarantee of payment where the Statute of Frauds is satisfied.

*Id.* The court further observed, "Missouri cases have recognized that the underlying obligation may provide the basis for a cause of action quite apart from an instrument securing the obligation." *Id.* (citing *Burk v. Walton,* 337 Mo. 781, 86 S.W.2d 92, 94 (1935), and *Reifeiss v. Barnes,* 192 S.W.2d 427, 430 (Mo.App.1946)).

In the case *sub judice,* Chatsworth Missouri did not sign the 1980 Note. The 1980 Note was not signed by someone with the intent and authority to obligate Chatsworth Missouri. Because Chatsworth did not sign the 1980 Note, Section 400.3–401, RSMo 1978, in effect when the note was signed, proscribes a court compelling Chatsworth Missouri to pay it. Suit was brought to enforce the terms of the 1995 Note. The suit does not assert a claim against Chatsworth Missouri regarding the underlying purchase agreement for which the 1980 Note, signed by Eugenio Concepcion in his individual capacity, was partial consideration. Both counts II and III of Plaintiffs' petition sought judgment against Chatsworth Missouri for defaulting on the 1995 Note, for which and in which Chatsworth Missouri's liability for the 1980 Note was the stated consideration. Chatsworth Missouri had no liability for the 1980 Note when it was signed and by statute acquired none. The 1980 Note was the only consideration for the 1995 Note. The basic elements of an agreement are an offer, acceptance of that offer, and consideration to support the contract. *Citibank (South Dakota), N.A. v. Wilson,* 160 S.W.3d 810, 813 (Mo.App. W.D.2005). The trial court correctly determined the 1995 Note lacked consideration to make a binding agreement, and, therefore, Chatsworth Missouri was not liable for the 1995 Note.

## Ratification

Plaintiffs claim that the court erred in concluding that the only way Chatsworth Missouri could become liable for the terms of the 1980 Note was by signing it, which it did not do. They claim that Chatsworth Missouri is liable despite the provisions of section 400.3–401, RSMo 1978, because it ratified the 1980 Note. They claim that ratification effectively negates the provisions of the statute, and they assert that the court errantly failed to consider extrinsic evidence because the parol evidence rule does not bar evidence that Chatsworth Missouri ratified the 1980 Note and obligated itself to its terms. Plaintiffs acknowledge that the parol evidence rule bars introduction of prior or contemporaneous agreements to alter the terms of the 1980 Note, but they assert that the rule does not bar the introduction of evidence of subsequent transactions for the purpose of altering the terms of the note. Plaintiffs cite *George F. Robertson Plastering Co. v. Magidson*, 271 S.W.2d 538 (Mo. 1954), and *Warrenton Campus Shopping Center, Inc. v. Adolphus*, 787 S.W.2d 852 (Mo.App. E.D.1990), as support for their position that the law recognizes that by ratifying an agreement for which it was not originally obligated, an entity can become obligated to the agreement's terms. Thus, they assert that evidence of events subsequent to the signing of the 1980 Note are admissible to prove that Chatsworth Missouri ratified the promissory note and is obligated to pay it, and, thus, because Chatsworth Missouri's legal obligation to the terms of the 1980 Note is the consideration for the 1995 Note, Chatsworth Missouri is bound by the terms of the 1995 Note.

*Magidson* involved an equitable mechanics lien suit in which plaintiff sought a lien for $10,003.20, the amount claimed to be due for lath and plaster work on an apartment building in St. Louis. Defen-

dant, Oakland Realty Company, was the owner of the property, and defendant Magidson was the general contractor. The parties had entered into a contract that included payment for work done by Plaintiff on a construction project of cost plus 10% overhead and 10% profit. The principal issue for determination was whether plaintiff was limited to the contract price or whether it could recover the full amount it claimed for labor and material used, on the cost plus basis. The plaintiff claimed that the contract had been abrogated, and the trial court found that the parties had abandoned the contract. The trial court determined that the plaintiff furnished and installed its materials, both lathing and plastering, and furnished the labor for installation on a quantum meruit basis. *Id.* at 539. The defendant asserted before the trial court and on appeal before the Supreme Court that the contract controlled and that, because the parties had a contract, the parol evidence rule precluded introduction of extrinsic evidence. The Court in *Magidson,* determining that the trial court had not erred in permitting extrinsic evidence of events post execution of the written contract, stated:

> The parol evidence rule forbids the admission of parol evidence of prior or contemporaneous agreements to alter, vary or contradict a written contract but it does not prohibit parol evidence of an agreement, entered into subsequent to the time when the written contract was executed, to alter or abrogate the written contract. We must, therefore, hold that this evidence was admissible; and that it was substantial evidence that the original written contract was abandoned and the work done under a different agreement than made. (internal citations omitted)

*Id.* at 541–42.

*Adolphus* involved a corporation that sued for money due under a written sales contract for the purchase of a shopping

center. Some rental payments in the shopping center were based on a percentage of the tenant's profits and were only computed once a year. The contract contained a provision entitling the appellant corporation to a pro-rata share of these payments. The roof of the property was damaged, however, and the buyer would not have accepted the property in its condition without a compromise to alter the sales contract provision that affected appellant seller's right to receive a pro-rata share of tenant profit payments. When tenant rents became due several months after the sale, appellant seller demanded the pro-rata share of the tenant profits per the sales agreement, and respondents refused. Appellant sued for recovery. The jury found for respondents, and appellant appealed. Among the holdings of the Eastern District was that the parole evidence rule did not exclude evidence that the seller waived the pro-rata share of rents in exchange for the purchasers' acceptance of the shopping center with a faulty roof. The court stated:

> The parol evidence rule prohibits use of oral evidence to contradict or change the terms of a written, unambiguous and complete contract absent fraud, common mistake, accident or erroneous omission. The rule only prohibits evidence of contrary agreements made prior to or contemporaneously with the contract; it does not prohibit evidence of agreements entered into after the contract was executed. Thus, the parol evidence rule does not apply where a party admits the terms of the contract existed as written, but attempts to show the contract has been abrogated or replaced by a subsequent agreement. (internal citations omitted)

*Id.* at 855.

The holdings of the courts in *Magidson* and *Adolphus* were that evidence of agreements subsequent to the written contract each party entered into was admissible to show that the initial contract had been abrogated or altered by the parties. Thus, the courts in the two cases determined that evidence of a new agreement, entered into subsequent to the time when the original written contract was executed, was not excluded by the parol evidence rule. *Magidson*, 271 S.W.2d at 541–42.

In *Clear v. Missouri Coordinating Board for Higher Education*, 23 S.W.3d 896 (Mo.App. E.D.2000), a case that considered whether an agreement can affect a third party if that party ratifies a contract between others, the Eastern District stated:

> An individual who was not originally bound by an agreement will become bound if he or she ratifies the agreement. An individual ratifies an agreement if he or she either expressly or by implication confirms or adopts the agreement with knowledge of its contents. The implication may be made even though the individual did not intend to ratify. (citations omitted)

*Id.* at 901.

■ Both the *Magidson* and *Adolphus* courts considered whether the parol evidence rule applied where actions of the parties subsequent to the original agreement abrogated the original agreement. The parol evidence rule did not apply because the proffered evidence related to post agreement events and not to events that occurred before or at the time of the original agreement. *Clear* considered the issue of ratification of an agreement by one not originally obligated by the agreement's terms. All three cases are distinguishable from the case *sub judice* for at least two reasons. The holdings in these cases involved contracts that were not promissory notes, and, for that reason, section 400.3–401, RSMo 1978, would not have been applicable. The case now before this court involves a promissory note signed February 1, 1980, by Eugenio Con-

cepcion individually and not acting for or in behalf of Chatsworth Missouri. The 1980 Note was not an agreement entered into between Plaintiffs and Chatsworth Missouri. Plaintiffs later purchased the 1980 Note. Section 400.3–401, RSMo 1978, applied and precluded the claim that Chatsworth Missouri could become liable for the terms of the 1980 Note because it was not a signatory to it. Although the statute precludes successfully suing Chatsworth Missouri to enforce the terms of the 1980 Note, the statute does not preclude suit on the underlying purchase agreement, provided Chatsworth Missouri were liable under the provisions of that agreement. Section 400.3–401 bars Plaintiffs' theory of recovery against Chatsworth Missouri—that the partnership ratified the 1980 Note.

Plaintiffs acknowledge that no Missouri case that deals with ratification considers Section 400.3–401(1). They cite *North Carolina Nat'l Bank v. Wallens,* 31 N.C.App. 721, 230 S.E.2d 690 (1976), as the only case that they are aware of that considers the provision of the UCC section, adopted as North Carolina law, "No person is liable on an instrument unless his signature appears thereon." *Id.* at 691. In *Wallens,* the trial court dismissed the plaintiff's pleading that defendants had unconditionally guaranteed and assumed primary liability for any debts of a named partnership, that plaintiff loaned the partnership a named sum, and that the defendants executed a promissory note on behalf of the partnership. The partnership name did not, however, appear on the note. The court concluded that the trial court erred in dismissing the pleading because plaintiff was entitled to recovery, even without the partnership's signature on the note, if it proved that the signing party was acting on behalf of the partnership in procuring the loan and was authorized to so act, or that the partners, with knowledge of the transaction, thereafter ratified

the acts of their partner. *Id.* at 691. North Carolina is a notice-pleading jurisdiction unlike Missouri, which is a fact pleading state. The court determined that plaintiff's pleading was sufficient as written to provide notice to the defendants that potential liability had to be based on something other than that of a party to the note. The court said, "That a nonsigner is ordinarily not liable on an instrument which he had not signed 'does not mean that a nonsigner may not be liable under some principle of law. It only means that the liability of the nonsigner is not as a party to the instrument.'" *Id.* at 692. The court noted that, the statute "does not affect the liability of a nonsigner in connection with an original obligation for which the instrument was later given on other circumstances relating to the same transactions." *Id.* Thus, the North Carolina court determined that plaintiff's petition provided sufficient notice to defendants that they were defending against liability for the underlying transaction and not the note, which had not been signed by the defendants as partnership. Nothing in the *Wallens* case is inconsistent with the ruling in this case.

The statute precludes recovery against Chatsworth Missouri for the 1980 Note, and, therefore, the 1995 Note for the reasons discussed. Chatsworth Missouri, by an authorized agent, did not sign the Note as section 400.3–401 required for it to become liable on the Note. To hold otherwise would conflict with the then expressed intent of the General Assembly.

Therefore, the trial court's summary judgment is affirmed.

SMART, P.J. and HARDWICK, J. concur.